UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **CASE NO. 5:08-cv-0439-PWG** |
| } | |
| **REDSTONE FEDERAL CREDIT UNION,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

This case is currently before the court on defendant Redstone Federal Credit Union's ("RFCU") Motion to Dismiss. (Doc. 11.)[1] The magistrate judge entered an Order Pursuant to Paragraph 5, General Order of Reference (the "Report and Recommendation"), denying RFCU's Motion. (Doc. 19.) The parties were allowed ten (10) days in which to file written objections to the recommended disposition pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure. (*See id.* at 18.) RFCU filed its Objections, (Doc. 20), and plaintiff Federal Insurance Company ("Federal") filed a Response to RFCU's Objections, (Doc. 21).

Having carefully reviewed and considered *de novo* all the materials in the court file, including the Report and Recommendation, RFCU's Objections, and Federal's Response, the court is of the opinion that RFCU's Objections are due to be sustained, the magistrate judge's recommendation is due to be accepted in part and rejected in part, and his report

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

modified. Specifically, the magistrate judge's recommendation is due to be rejected to the extent it recommends denying RFCU's Motion to Dismiss Counts II, III, and IV of Federal's Amended Complaint, (Doc. 14). As to those counts, RFCU's Objections are due to be sustained, and the magistrate judge's report modified, with the changes set forth below. Regarding RFCU's Motion to Dismiss Count I, the magistrate judge's recommendation is due to be accepted, but his report modified, with the changes set forth below. Accordingly, RFCU's Motion to Dismiss, (Doc. 11), is due to be granted in part and denied in part.

## I.  MOTION TO DISMISS STANDARD OF REVIEW

In addition to an assertion of the grounds for the court's jurisdiction and a demand for relief, a pleading that states a claim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a defendant's motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules, the court must accept the factual allegations presented in the complaint as true and construe them in the light most favorable to the plaintiff. Fed. R. Civ. P. 12(b)(6); *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). The Supreme Court of the United States has explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 268 (1986) (internal citations omitted). In essence, then, the Court has held that a motion to dismiss must be denied when "[plaintiff's claims] may be supported by showing any set of facts consistent with the allegations in the complaint." *See id.* at 563 (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (rephrasing the "no set of facts" dismissal standard that was the Court's previous precedent in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, "[d]ismissal is appropriate 'when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" *D.P. ex rel. E.P. v. Sch. Bd. of Broward County*, 483 F.3d 725, 728-29 (11th Cir. 2007) (quoting *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *see also Acosta v. Campbell*, 309 F. App'x 315, 318 (11th Cir. 2009).

## II.  FACTUAL AND PROCEDURAL HISTORY

The facts of the case, taken from the Amended Complaint, and assumed as true for purposes of a motion to dismiss,[2] are as follows:

> 5. David Jenerick ("Jenerick") was employed by Pearce Construction Company ("Pearce") in Huntsville, Alabama as Pearce's company controller from August, 1999 through February, 2007.
>
> 6. From 1999 through 2007, Jenerick embarked upon a scheme to defraud and steal

---

[2] Of course, only factual allegations, not legal conclusions, must be taken as true. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

funds from Pearce.

7. As Controller, it was Jenerick's job to prepare payroll checks, balance the payroll account and prepare and file payroll taxes and returns. Time cards were prepared by on-site superintendents who turned then [sic] in to be reviewed and approved by Jenerick. Based upon these time cards, Jenerick was responsible for preparing payroll checks and presenting them to Lewis Price or Hank Pearce for signature. After the signed checks were returned, Jenerick was responsible for giving the checks, together with the time cards, to a company clerk who separated the checks by job and gave them to the superintendents for distribution to the employees.

8. As part of his scheme to defraud Pearce, Jenerick prepared forged time cards for employees who no longer worked for Pearce. Jenerick then prepared payroll checks to correspond to the forged time cards and submitted the forged timecards and corresponding checks to Mr. Price or Mr. Pearce for signature. Mr. Jenerick then intercepted the checks and removed the forged timecards along with their corresponding checks before forwarding the remaining checks to the clerk for disbursement (the "Fraudulent Conduct"). Mr. Jenerick kept the fraudulent checks, forged the payee's endorsement and then deposited them into his account at Red Stone Federal Credit Union. For each check, Jenerick filed altered W-2 forms with the IRS and State of Alabama by which he caused Pearce Construction to pay withheld taxes into his own account with the respective agency.

9. In total, Jenerick stole 627 checks totaling $292,466.80 made payable to past employees of Pearce Construction (the "Fraudulent Checks").

10. Jenerick deposited each of the Fraudulent Checks into a Redstone Federal Credit Union account which he owned and controlled. Upon information and belief, the account number for the Jenerick's account is 262275835 (the "Redstone Account").

11. Each of the Fraudulent Checks was accepted for deposit by Defendant Redstone over a forged endorsement and into an account that was not in the name of the various payees on the checks.

12. Upon information and belief, Jenerick's brother-in-law, Mike Goodman, is an employee of Defendant Redstone. Throughout the course of Jenerick's Fraudulent Conduct, Goodman served as Defendant Redstone's Interim President and Executive Vice President.

13. Defendant Redstone did not exercise ordinary care or follow commercially reasonable banking practices to verify the authenticity of the endorsement or determine whether Jenerick had the proper authority to deposit over 600 checks payable to a payee other than himself into his personal bank account.

14. Upon further information and belief, due to Jenerick's relationship with Defendant Redstone's Vice President and Interim President Mike Goodman, the Fraudulent Checks were not subject to appropriate scrutiny and verification procedures.

15. At all times relevant to this suit, Plaintiff Federal provided Employee Theft Insurance to Pearce Construction pursuant to Policy Number 8170-7760.

16. Based upon the Fraudulent Conduct of Jenerick, Pearce Construction submitted a claim to Federal in the amount of $343,014.08, representing the total amount of the Fraudulent Checks plus the amount paid in federal and state taxes for each Fraudulent Check.

17. As a result of Pearce Construction's claim, Federal paid Pearce Construction the amount of $338,014.08 representing the amount of the claim less Pearce Construction's $5,000.00 deductible.

18. In exchange for the payment referenced in Paragraph 1[7], Pearce executed a Release and Assignment which gave Federal an assignment of Pearce's claims against [RFCU] to the extent of payment. Also as a result of the payment of the claim, Federal is a proper party to assert this Complaint pursuant to its rights of subrogation, both equitable and contractual.

(Doc. 14 at ¶¶ 5-18.)

Federal filed its initial Complaint on March 11, 2008, alleging two common law causes of action against RFCU, including Count I – Negligence, and Count II – Failure to Comply with Commercially Reasonable Banking Practices. (Doc. 1 at ¶¶ 17-23.) In response to Federal's initial Complaint, RFCU filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 11.) RFCU filed a Brief in Support of its Motion to Dismiss contemporaneously with the Motion. (Doc. 12.)

Thereafter, Federal filed an Amended Complaint. (Doc. 14.) In the Amended Complaint, Federal added two additional causes of action pursuant to the Alabama Commercial Code, including Count I – Failure to Exercise Ordinary Care Under Alabama

Code § 7-3-405, and Count II – Failure to Exercise Ordinary Care Under Alabama Code § 7-3-404.[3] (*Id.* at ¶¶ 19-28.) Along with the Amended Complaint, Federal also filed a Response in Opposition to Defendant's Motion to Dismiss. (Doc. 16.)

Subsequently, RFCU filed a Reply Brief in Further Support of its Motion to Dismiss. (Doc. 17.) In its Reply, RFCU maintained its initial Motion to Dismiss should apply equally to Federal's Amended Complaint, and therefore requested that the court treat its initial Motion as a Motion to Dismiss the Amended Complaint. (*Id.* at 2.) Because Federal's Response in Opposition to Defendant's Motion to Dismiss considered both the Complaint and Amended Complaint, (*see generally* Doc. 16), RFCU asked that the court deem the matter under submission. (Doc. 17 at 3.) Federal did not request leave to file a sur-reply, and the magistrate judge applied RFCU's initial Motion to Dismiss to Federal's Amended Complaint. (Doc. 19 at 1 n.1.)

As aforementioned, the magistrate judge entered a Report and Recommendation denying RFCU's Motion to Dismiss as to all four counts. (*Id.* at 18.) The case was then reassigned to the undersigned and, thereafter, in response to the magistrate judge's Report and Recommendation, RFCU filed Objections with respect to Counts II, III, and IV. (Doc. 20.) Federal then filed a Response. (Doc. 21.) The court will address each of the Objections in turn.

---

[3] Federal retained its common law causes of action against RFCU as Counts III and IV of the Amended Complaint. (Doc. 14 at ¶¶ 29-35.)

6

### III.  DISCUSSION

A.  **RFCU'S ARGUMENTS REGARDING COUNT II**

RFCU first objects to the magistrate judge's Report and Recommendation with respect to Count II of Federal's Amended Complaint, (*see* Doc. 20 at 1-3), which alleges that RFCU is liable pursuant to Alabama Code § 7-3-404, (Doc. 14 at ¶¶ 24-28).  Section 3-404, applicable in cases involving imposter or fictitious payees, provides in pertinent part that:

> (a) If an imposter, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the imposter, or to a person acting in concert with the imposter, by impersonating the payee of the instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.
>
> (b) If (I) a person whose intent determines to whom an instrument is payable (Section 7-3-110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:
>> (1) Any person in possession of the instrument is its holder.
>> (2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

Ala. Code. § 7-3-404(a)-(b).  RFCU argues that the magistrate judge should have dismissed Count II because "§ 7-3-404 is plainly not applicable to [Federal's] factual allegations." (Doc. 20 at 2.)

Initially, it is important to note that despite the paucity of case law in Alabama analyzing revised § 7-3-404,[4] it remains this court's opinion that § 3-404 does not create an

---

[4] The Uniform Commercial Code (the "U.C.C." or the "Code") drafters significantly revised Articles 3 and 4 in 1990; forty-eight states, including Alabama, have since adopted the revisions.

independent cause of action, but instead provides a defense available to persons, typically depository banks, who in good faith and under certain conditions accept and/or pay an otherwise ineffective instrument. *See* Ala. Code § 7-3-404. Stated differently, § 3-404 allows a bank, by acting in good faith, to make effective an indorsement rendered ineffective by forgery, and thereby discharges or limits the bank's obligation to credit its customer's account for breaching § 4-401(a), which sets out a bank's basic contractual obligation to pay only those instruments that are "properly payable." *Compare* Ala. Code § 7-4-401(a) ("An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank."),[5] *and* Ala. Code § 7-3-403(a) ("Unless otherwise provided in this article or Article 4, an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value."), *with* Ala. Code § 7-3-404(a), (b)(2) ("[A]n indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection."). Should the bank establish its good faith and validate the forgery pursuant to subsection (a) or (b) of § 3-404, subsection (d) then provides the customer, or "person bearing the loss," with a counteraction if the bank nevertheless "fail[ed] to exercise ordinary

---

*See* Brooke Overby, *Check Fraud in the Courts after the Revisions to U.C.C. Articles 3 and 4*, 57 Ala. L. Rev. 351, 351 (2005); *see also* 1995 Ala. Legis. Serv. 95-668 (West) (adopting revised Articles 3 and 4 on August 3, 1995, and setting January 1, 1996 as the effective date).

[5] An official comment to § 4-401 makes clear that "[a]n item containing a forged drawer's signature or forged indorsement is not properly payable." Ala. Code § 7-4-401 cmt. 1.

care in paying or taking the instrument and that failure substantially contribute[d] to loss resulting from payment of the instrument." Ala. Code § 7-3-404(d). In this scenario, the "person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss," i.e. a comparative negligence loss allocation scheme. *Id.*

As with § 3-404, § 3-405 establishes the same burden-shifting, comparative negligence loss allocation scheme, and likewise constitutes a defense and counteraction, not an independent claim. *See* Ala. Code § 7-3-405;[6] *see also* Overby, *supra* note 4, at 371-78

---

[6] Section 3-405 states that:

(a) This section applies to fraudulent indorsements of instruments with respect to which an employer has entrusted an employee with responsibility as part of the employee's duties. The following definitions apply to this section:

(1) "Employee" includes an independent contractor and employee of an independent contractor retained by the employer.

(2) "Fraudulent indorsement" means (I) in the case of an instrument payable to the employer, a forged indorsement purporting to be that of the employer, or (ii) in the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.

(3) "Responsibility" with respect to instruments means authority (I) to sign or indorse instruments on behalf of the employer, (ii) to process instruments received by the employer for bookkeeping purposes, for deposit to an account, or for other disposition, (iii) to prepare or process instruments for issue in the name of the employer, (iv) to supply information determining the names or addresses of payees of instruments to be issued in the name of the employer, (v) to control the disposition of instruments to be issued in the name of the employer, or (vi) to act otherwise with respect to instruments in a responsible capacity. "Responsibility" does not include authority that merely allows an employee to have access to instruments or blank or

(discussing the available defenses under the U.C.C. and recognizing that "[i]f a defendant successfully raises one of the defenses [available under Articles 3 and 4] the party against whom that defense applies may have a claim based on the defendant's own negligence"). However, unlike § 3-404, which again applies to cases involving imposter or fictitious payees, § 3-405, as noted above, *see supra* note 6, "applies to fraudulent indorsements of instruments with respect to which an employer has entrusted an employee with responsibility as part of the employee's duties," Ala. Code § 7-3-405(a).

Here, RFCU maintains that, given the Amended Complaint's factual allegations, § 3-404(a) does not apply because "[t]here is no allegation that Jenerick induced Pearce

---

incomplete instrument forms that are being stored or transported or are part of incoming or outgoing mail, or similar access.

(b) For the purpose of determining the rights and liabilities of a person who, in good faith, pays an instrument or takes it for value or for collection, if an employer entrusted an employee with responsibility with respect to the instrument and the employee or a person acting in concert with the employee makes a fraudulent indorsement of the instrument, the indorsement is effective as the indorsement of the person to whom the instrument is payable if it is made in the name of that person. If the person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.

(c) Under subsection (b), an indorsement is made in the name of the person to whom an instrument is payable if (I) it is made in a name substantially similar to the name of that person or (ii) the instrument, whether or not indorsed, is deposited in a depository bank to an account in a name substantially similar to the name of that person.

Ala. Code § 7-3-405.

management to issue checks to an imposter or to an accomplice of an imposter," that § 3-404(b)(I) "is not applicable because Pearce management **did** intend (as was necessary for Jenerick's alleged scheme) that the employee-payees have an interest in the checks," and lastly that § 3-404(b)(ii) cannot apply because "the employee-payees were real persons, not fictitious persons." (Doc. 20 at 2.) Instead, RFCU insists that § 3-405 applies under the facts currently alleged, and that the court should therefore reject the magistrate judge's Report and Recommendation, and dismiss Count II of Federal's Amended Complaint. (*Id.* at 3.)

Simply put, despite Federal's arguments to the contrary, (*see* Doc. 21 at 6-8), the court agrees that, under the facts alleged, § 3-404 would not apply in this case even if RFCU acted in good faith in accepting and paying the forged checks. Rather, *under the facts alleged*, if RFCU acted in good faith, § 3-405 would apply.[7] Nevertheless, as aforementioned, neither section constitutes an independent cause of action, but a defense that may discharge or limit RFCU's otherwise strict liability for breaching § 4-401, and a counteraction available upon assertion of the defense. *See, e.g.*, 11 Am. Jur. 2d *Banks and Financial Institutions* § 886

---

[7] Indeed, under the Amended Complaint's factual allegations, which this court must accept as true for purposes of the Motion to Dismiss, *see Gonzalez*, 980 F.2d at 1419, Mr. Price and/or Mr. Pearce intended the payees, former employees of the company and thus not fictitious persons, to have an interest in the checks when signing them. (*See* Doc. 14 at ¶¶ 7-8.) As RFCU correctly points out, only Mr. Price and Mr. Pearce's intent matters for purposes of § 3-404(b), and, "[u]nder the facts alleged, Jenerick's intent has no relevance whatsoever." (Doc. 17 at 11 (citing Ala. Code § 7-3-110(a)).) Mr. Price and/or Mr. Pearce voluntarily indorsed the checks and then returned them to their employee, Jenerick, for delivery to the company clerk. (*See* Doc. 14 at ¶¶ 7-8.) Despite this entrustment, Jenerick forged the payees' indorsements, and deposited the checks into his personal account. (*Id.* at ¶ 10.) Simply put, these allegations, assuming RFCU acted in good faith in accepting and paying the checks, invoke § 3-405, not § 3-404.

("A bank is liable to its customer for any unauthorized payment charged against the customer's account. The bank's duty to charge its customer's account only for 'properly payable' items imposes standards of strict liability."); *see also C & N Contractors, Inc. v. Cmty. Bancshares, Inc.*, 646 So. 2d 1357, 1360 (Ala. 1994) (noting under the previous version of Articles 3 and 4 that a bank's successful assertion of one of the U.C.C. good faith defenses generally extinguishes its liability under § 7-4-401); *see also* Overby, *supra* note 4, at 385 ("The [UCC check fraud] process might be best envisioned as one involving three steps: (1) the initial cause of action, based on either section 4-401 or section 3-420; (2) where available under the facts, the defendant's defenses, based on section 3-404, 3-405, 3-406, and 4-405; and (3) where available under the facts, the original plaintiff's comparative negligence cause of action claim.") (internal footnotes omitted). As a result, the court finds discussion regarding the applicability of either section to be premature, and is of the opinion that Count II is due to be dismissed.[8] However, the court's Order will be without prejudice to Federal's right to file a Second Amended Complaint. In its Second Amended Complaint, Federal may assert a claim pursuant to Alabama Code § 4-401 for RFCU's breach of its contractual obligation to pay only those items that are properly payable. Thereafter, in its Answer,

---

[8] Additionally, the court is of the opinion that Count I, which alleges RFCU's failure to exercise ordinary care under Alabama Code § 7-3-405, is also due to be dismissed for the same reasons as Count II. That said, considering Federal has not had an opportunity to address this basis for dismissal, and moreover because RFCU did not object to the magistrate judge's Report and Recommendation regarding Count I, (*see* Doc. 20 at 7), this court will not yet dismiss it. However, should Federal reassert the claim in its Amended Complaint, it would, again, be due to be dismissed.

RFCU may assert defenses pursuant to, *inter alia*, §§ 7-3-404[9] and 7-3-405, depending on the allegations in the Amended Complaint. And, should RFCU raise either defense, Federal would then be able to assert the counteraction contained therein, alleging RFCU's own negligence in accepting and paying the checks.

**B. RFCU'S ARGUMENTS REGARDING COUNT III**

RFCU next objects to the magistrate judge's Report and Recommendation with regard to Count III of Federal's Amended Complaint, (*see* Doc. 20 at 3-6), which alleges that RFCU is liable for negligence under the common law, (Doc. 14 at ¶ 7). Specifically, RFCU maintains that the magistrate judge "erred in failing to conclude that dismissal of [Federal's] state common law claims is warranted where Ala. Code § 7-3-405 has displaced such common law claims." (Doc. 20 at 3.)

Alabama Code § 7-1-103 addresses the effect of the statutory scheme on common law causes of action, noting that "[u]nless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions." Ala. Code § 7-1-103(b). The Supreme Court of Alabama has addressed the provision, stating that:

> Whether a statutory provision has "displaced" a common-law cause of action under § 7-1-103 will depend to a great degree on (1) the levels of identity between, and

---

[9] Again, under the facts currently alleged in the Complaint, § 7-3-404 does not apply.

specificity of, both the common-law cause of action being asserted and the statutory provision, and (2) the extent to which the statutory language evidences that the provision's scope of operation affirmatively excludes a necessary basis of the common-law cause of action. *See generally C & N Contractors, Inc. v. Community Bancshares, Inc.*, 646 So. 2d 1357, 1361-63 (Ala. 1994) (discussing, without deciding, whether Ala. Code § 7-3-405 . . . displaces certain common-law claims of negligence and wantonness). Under § 7-1-103, when a statute provides a cause of action relating to a specific situation in a specific manner, then any common-law cause of action based upon a factual situation so materially identical that it is clearly within the specific scope of the provision must be said to have been 'displaced,' especially if it is in some way affirmatively excluded by the statutory language.

*Am. Liberty Ins. Co. v. AmSouth Bank*, 825 So. 2d 786, 794-95 (Ala. 2002).

As support for their contention that § 7-3-405 displaces Federal's common law negligence cause of action, RFCU relies on an opinion of the United States District Court for the Southern District of Alabama, which addressed whether revised § 7-3-405 of the Alabama Code displaced the plaintiff's claim for punitive damages, brought in connection with the plaintiff's statutory negligence claim. (*See* Doc. 20 at 4.) In *Continental Casualty Co. v. Compass Bank*, the court discussed the displacement issue in connection with the general rule set out in *American Liberty Insurance Co.*:

> "Section 3-405 is addressed to fraudulent indorsements made by an employee with respect to instruments with respect to which the employer has given responsibility to the employee. It covers . . . indorsements made in the name of payees of instruments issued by the employer." Off. Cmt. 1 to Ala. Code § 7-3-405. Also, Ala. Code § 7-3-405 specifically provides that "[i]f the person . . . taking it . . . for collection fails to exercise ordinary care in . . . taking the instrument and that failure substantially contributes to loss resulting from the fraud, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss." Ala. Code § 7-3-406 addresses the allocation of loss resulting from the negligence contributing to forged signatures on instruments. The Official Comment 1 to Ala. Code § 7-3-406 notes that "[s]ection 3-406 does not make the negligent party liable in tort for damages resulting from the alteration".

14

> Thus, because the code sections address a specific factual situation and the same factual situation is alleged in this case, the commercial code's statutory provisions displace common-law claims. *American Liberty*, 825 So. 2d at 794-795. In *C & N Contractors, Inc. v. Community Bancshares, Inc.*, 646 So. 2d 1357, 1362 (Ala. 1994), the Alabama Supreme Court stated that [the previous version of] § 7-3-405 "appears to displace an action for common law negligence or wantonness. . . ." Section 3-405 has been revised to the extent that it includes a wider scope of factual situations. Official Comment 1 to Ala. Code § 7-3-405 states, "Section 3-405 includes cases that were covered by former Section 3-405(1)[(]c). The scope of Section 3-405 in revised Article 3 is, however, somewhat wider."
>
> Thus, it is evident that the Supreme Court of Alabama would view the enactment of Ala. Code § 7-3-405 as a displacement of claims factually covered by Ala. Code § 7-3-405 that could have been brought under *either a negligence or wantonness theory*. In sum, plaintiff's cause of action is limited to the Alabama Commercial Code. The bases for plaintiff's claim of punitive damage recovery, reckless and wanton conduct and conscious indifference, have been displaced by Ala. Code § 7-3-405.

*Con't Cas. Co. v. Compass Bank*, No. 04-0766-KD-C, 2006 WL 566900, at *15-16 (S.D. Ala. Mar. 6, 2006) (internal footnotes omitted). RFCU also points out, in addition to the reasons stated in *Continental Casualty Co.*, that revised § 7-3-405 utilizes a comparative negligence loss allocation scheme rather than the contributory negligence scheme called for by the previous versions of Articles 3 and 4; RFCU argues that this revised scheme "is wholly inconsistent with the contributory negligence regime in common law negligence claims," and "makes the conclusion that § 7-3-405 displaces common law negligence claims even more compelling than when the Alabama Supreme Court [in *C & N Contractors, Inc.*] originally opined that displacement had occurred." (Doc. 20 at 3-6.)

In response, Federal maintains that RFCU's citation to *American Liberty Insurance Co.* and *Continental Casualty Co.*, which both involve motions for summary judgment, is

15

premature, as this case is before the court on a motion to dismiss. (Doc. 21 at 6, 8-12.) Indeed, Federal posits that "Ala. Code § 7-3-405 may not apply," and that, given the primacy of the case, with discovery yet to commence, that Articles 3 and 4 of the Alabama Commercial Code may not apply at all. (*Id.* at 8-12.) As support for their position, Federal correctly notes that, for §§ 7-3-404 and 7-3-405 to apply, RFCU must have acted with good faith. (*Id.* at 8-9.) However, Federal asserts that it has alleged facts suggesting RFCU failed to act in good faith, and that, "[s]hould the trier of fact [agree], then Alabama Code §§ 7-3-405 and 7-3-404 will not apply at all." (*Id.* at 10.) For that reason, Federal insists that were the court to dismiss its common law causes of action, and discovery thereafter reveal that RFCU did not act in good faith, then "Federal would be left without a claim," and, "[i]n essence, RFCU would benefit from its own bad faith." (*Id.* at 12.) The court disagrees.

As stated above, §§ 7-3-404 and 7-3-405 do not provide independent causes of action, but defenses and counteractions available under certain facts. *See supra* Part III.A. And, while Federal is correct that, for either section to apply, RFCU must establish its good faith in accepting the checks, Federal is incorrect that it would be left to its common law causes of action absent such a showing. Instead, under Alabama Code § 7-4-401, assuming Federal satisfies the burden of demonstrating that RFCU paid checks that were otherwise not "properly payable," *see* Ala. Code § 7-4-401(a), should RFCU thereafter fail to demonstrate its good faith under the applicable U.C.C. defense, RFCU will be strictly liable, and neither RFCU's nor Federal's negligence will be at issue. On the other hand, the parties'

comparative negligence will become an issue should RFCU demonstrate its good faith;[10] however, the court agrees that, in that scenario, any analysis into the parties' comparative negligence is governed by the Code.  *See* §§ 7-3-404(d), 7-3-405(b); *Con't Cas. Co.*, 2006 WL 566900, at *16.  As a result, the court finds RFCU's reliance on *Continental Casualty Co.* to be persuasive, and agrees that, given the Amended Complaint's factual allegations, Federal's "cause of action is limited to the Alabama Commercial Code."[11]  *See Cont'l Cas. Co.*, 2006 WL 566900, at *16; *see also* Overby, *supra* note 4, at 392 (noting that while "courts are far from unanimous on the matter of the viability of non-Code claims . . . the weight of case law appears to be coming down against the actions").  The court finds that RFCU's Objection as to Count III is therefore due to be sustained, and Count III is due to be dismissed.

### C.    RFCU'S ARGUMENTS REGARDING COUNT IV

Lastly, RFCU objects to the magistrate judge's Report and Recommendation as to

---

[10] Of course, Federal must first show that the checks were not "properly payable." Ala. Code § 7-4-401.

[11] It is important to note that while Federal is correct that *American Liberty Insurance Co.* and *Continental Casualty Co.* involve motions for summary judgment, *see Am. Liberty Ins.*, 825 So. 2d at 788; *Con't Cas. Co.*, 2006 WL 566900, at *1, rather than a motion to dismiss, (*see* Doc. 21 at 6), the court finds the distinction to be immaterial.  Simply put, the court finds that Federal has failed to "show[] any set of facts consistent with the allegations in the complaint," *see Twombly*, 550 U.S. at 563 (citing *Sanjuan*, 40 F.3d at 251), other than its unpersuasive argument premised on RFCU's possible lack of good faith, which would support an independent cause of action for negligence under the common law.

Count IV of Federal's Amended Complaint, (*see* Doc. 20 at 6-7), which alleges that RFCU "fail[ed] to exercise ordinary care and to comply with commercially reasonable banking practices," (Doc. 14 at ¶¶ 32-35). Specifically, RFCU maintains that "Count IV . . . should be dismissed because it fails to state a recognized claim and also because any common law claim based on the alleged conduct has been displaced by Ala. Code § 7-3-405." (Doc. 20 at 7.) The court agrees.

Initially, the court agrees with RFCU that Federal has failed to cite to authority demonstrating that Alabama recognizes a common law cause of action for "failure to comply with commercially reasonable banking practices." (*Id.* at 6.) Indeed, neither in its Response in Opposition to Defendant's Motion to Dismiss, (Doc. 16), nor in its Response to Defendant's Objections to Magistrate's Order, (Doc. 21), does Federal cite to any authority that suggests the viability of the cause of action as an independent claim. Instead, Federal addresses the authority cited by RFCU, concluding that RFCU "has failed to point to any authority indicating that dismissal at this stage of the litigation would be proper." (Doc. 16 at 19.) But, under Rule 8(a)(2) of the Federal Rules of Civil Procedure, it remains that Federal must plead "a short and plain statement of the claim showing that the pleader is entitled to relief," and the Rule presupposes alleging a valid legal claim. *See* Fed. R. Civ. P. 8(a)(2). Federal has not satisfied this pleading requirement as to Count IV of its Amended Complaint;[12] accordingly, RFCU's Objection with respect to Count IV is due to be sustained,

---

[12] Alternatively, for the same reasons as Count III, the court agrees that, even if Count IV of Federal's Amended Complaint states an otherwise valid claim under Alabama law, that considering

and Count IV is due to be dismissed.[13]

## CONCLUSION

For the reasons stated above, the court is of the opinion that RFCU's Objections are due to be sustained, and the magistrate judge's recommendation is due to be accepted in part and rejected in part. Specifically, the magistrate judge's recommendation is due to be rejected as to Counts II, III, and IV of Federal's Amended Complaint, accepted as to Count I, and his report modified, with the changes set forth above. RFCU's Motion to Dismiss, (Doc. 11), is due to be granted in part and denied in part. An Order in conformity with this Memorandum Opinion will be entered contemporaneously.

**DONE**, this 16th day of September, 2010.

_Sharon Lovelace Blackburn_
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE

---

the Amended Complaint's factual allegations, the claim has been displaced by Articles 3 and 4 of the Alabama Commercial Code. *See supra* Part III.B.

[13] It is important to address Federal's argument that the language of Count IV "is taken directly from several UCC code sections," and "is expressly based upon the UCC should the bank assert certain defenses, as anticipated by [Federal]." (Doc. 21 at 13.) Simply put, the court again agrees that the UCC provides a valid comparative negligence counteraction should RFCU assert certain defenses under the Code. Pleading an anticipatory claim for comparative negligence is therefore unnecessary.